1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF KENTUCKY
2    NORTHERN DIVISION at COVINGTON
                   - - -
3
     UNITED STATES OF AMERICA,    : Docket No. 17-cr-49
4                                 :
                      Plaintiff,  : Covington, Kentucky
5                                 : Wednesday, November 22, 2017
                                  : 9:00 a.m.
6    versus                       :
                                  :
7    MARIE ANTOINETTE CASTELLI,   :
                                  :
8                     Defendant.  :

9                      - - -
        TRANSCRIPT OF ARRAIGNMENT AND REARRAIGNMENT
10           BEFORE DAVID L. BUNNING
        UNITED STATES DISTRICT COURT JUDGE
11                     - - -

12   APPEARANCES:

13   For the United States:     ROBERT K. McBRIDE, ESQ.
                                U.S. Attorney's Office
14                              207 Grandview Drive
                                Suite 400
15                              Ft. Mitchell, KY 41017

16   For the Defendant:         JAMES M. WEST, ESQ.
                                Martin & West, PLLC
17                              157 Barnwood Drive
                                Suite 201
18                              Edgewood, KY 41017

19   Court Reporter:            LISA REED WIESMAN, RDR-CRR
                                Official Court Reporter
20                              35 W. Fifth Street
                                Covington, KY 41011
21                              (859) 291-4410

22

23

24
          Proceedings recorded by mechanical stenography,
25   transcript produced by computer.

1 (Proceedings commenced at 9:08 a.m.)

2 THE COURT:  Good morning.  I understand, Mr. McBride,

3 there is a plea to an information this morning; is that right?

4 MR. McBRIDE:  Good morning, Your Honor.  That is

5 correct.

6 THE COURT:  Okay.  Mr. West, you were appointed and

7 have been appointed for the defendant in the prior case quite

8 some time ago and had done quite a bit of work on her behalf

9 in that 16-33 case.

10 Formally, I'll need to appoint you to represent her in

11 this case as well.

12 MR. WEST:  Okay.

13 THE COURT:  Madam Clerk, you can reflect that in the

14 minutes.

15 As far as voucher goes, I would think that anything you

16 do in the 17-49 case, you can just start a new voucher as

17 of -- I don't know how you really go about doing that.  I know

18 there was a process that you set up with magistrate for

19 interim vouchers with the circuit.

20 MR. WEST:  I'll work with the clerk's office to work

21 it out.  It sounds like what you're advising me is that I need

22 to close out of the prior case.

23 THE COURT:  It certainly would make it more

24 efficient, I suppose, because 17-49 may not require an excess

25 fee voucher.

1          MR. WEST:  I would not expect it.

2          THE COURT:  Very well.  Enough preliminaries here.

3     How do you pronounce your last name, ma'am?

4          THE DEFENDANT:  Castelli.

5          THE COURT:  Castelli, okay.

6          The matter has been set this morning for a guilty plea to

7     a criminal information.  And prior to court; in fact, one day

8     last week, I recall, I received a copy of what is referred to

9     as a binding plea agreement.

10         That is a plea agreement under Rule 11(c)(1)(C), which,

11    if the Court accepts the plea agreement with the recommended

12    sentence, the Court would then need to sentence you to that

13    agreed sentence at sentencing.

14         Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Have you spoken with Mr. West about that?

17         THE DEFENDANT:  Yes, I have.

18         THE COURT:  I'm going to need to go through a number

19    of questions with you to make sure that you understand the

20    consequences of entering a plea.  I'm also going to need to

21    ask you some questions about your rights with respect to this

22    information.

23         So Mr. West, what is her situation as far as taking an

24    oath before the Court to tell the truth and all of that?

25         MR. WEST:  I'm sure she'll acknowledge that she'll

4

1      tell the truth.  I'm not sure how it plays with her faith.

2              THE COURT:  Well, all right.

3          Ma'am, do you understand the question I'm going to ask,

4      you've got to be truthful?

5              THE DEFENDANT:  Yes.

6              THE COURT:  If you lie, the answers could be used

7      later in prosecuting you in a separate prosecution, like, for

8      perjury.  If you lie to a judge, that's a separate crime.

9          Do you understand that?

10             THE DEFENDANT:  Um-hmm.

11             THE COURT:  Yes?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Would you prefer to stay at

14     the table?  I'll leave it up to you.  Would you prefer to

15     stand at the podium?

16             THE DEFENDANT:  I'm good here.

17             THE COURT:  Sit there, that's fine.

18         Okay.  You can just reflect that she has been sworn and

19     told me that she would tell the truth.

20         Okay.  Now, the information itself, it's two counts.

21     Have you received a copy of this?  It's a total of three

22     pages.  The first two pages are Counts 1 and 2, and Count 3 is

23     the penalty tab.

24             MR. WEST:  Yes, Your Honor.

25             THE COURT:  Have you received that?

1        THE DEFENDANT:  Yes, right now.

2        THE COURT:  Right now, okay.  Had you received a copy

3 of it or gone over it with Mr. West prior to today?

4        THE DEFENDANT:  We went over the plea agreement, but

5 I didn't see this paper.  This three paper, I'd never seen it

6 before this.

7        THE COURT:  Did the plea agreement reference the

8 information charging the two counts?

9        THE DEFENDANT:  Yeah, I've seen the plea agreement

10 before, but I just didn't see this three-page thing.

11        THE COURT:  You anticipated pleading guilty to an

12 information; did you not?

13        THE DEFENDANT:  Yes.

14        THE COURT:  I have to ask, is this the first pleading

15 which bears Robert -- it says D-u-c-a-n.  I'm sure that's Rob

16 Duncan.

17        MR. McBRIDE:  It is, Your Honor.

18        THE COURT:  And you signed on his behalf?

19        MR. McBRIDE:  I did.  He was sworn in yesterday at

20 approximately 4:30.

21        THE COURT:  I understand that.  I got an email from

22 Chief Judge Caldwell about that.

23        MR. McBRIDE:  Yes, Judge.  I spoke to him both this

24 morning and last night, and he authorized his signature -- for

25 me to sign for him on behalf of the United States attorney.

1          THE COURT:  All right.  Now, you certainly are aware

2     of the fact you were previously indicted by the grand jury.

3          THE DEFENDANT:  Yes.

4          THE COURT:  And in that case, the case was presented

5     to a federal grand jury, who determined that there was

6     probable cause to believe you committed the offenses charged

7     in the original case.

8        You have a right in this case, just like you did last

9     time, to have this case presented to a federal grand jury, who

10    would then determine if there was probable cause to return an

11    indictment.

12       Do you understand that from a processing standpoint?

13         THE DEFENDANT:  I guess so, yeah.

14         THE COURT:  Have you gone over that with her,

15    Mr. West, as far as the waiver of the indictment, the plea to

16    the information?

17         MR. WEST:  Yes.  We reviewed the waiver of

18    indictment.  I explained it to her.

19         THE COURT:  That's covered in there.  In essence, the

20    Rules of Criminal Procedure, ma'am, that apply here in this

21    court --

22         THE DEFENDANT:  Uh-huh.

23         THE COURT:  -- allow you to waive that right and

24    consent to being charged by way of an information, which is

25    signed by the U.S. attorney.

1        In your case, as it relates to this new case, which is

2    docketed as 17-49, the felony charges in Counts 1 and 2 have

3    been brought by the U.S. United States attorney.

4        (Cell phone ringing.)

5            THE COURT:  Making sure the phones are off.

6            DEPUTY MARSHAL:  I apologize, Your Honor.

7            THE COURT:  That's fine.  Let me start over.  The

8    Rules of Criminal Procedure allow you to waive your right to

9    have a case presented to the grand jury and have it presented,

10   like it's being presented here, by way of this criminal

11   information.

12       Do you understand that?

13           THE DEFENDANT:  Yes, now I do.  I didn't know this

14   before.

15           THE COURT:  All right.  And they can only do that,

16   "they" being the United States, if you consent in writing.

17       Do you understand that?

18           THE DEFENDANT:  That's what you're telling me, yes.

19           THE COURT:  If you waive indictment by the grand

20   jury, the case will proceed against you on the criminal

21   information just as though you had been indicted.

22       Do you understand that?

23       There's no real procedural difference from an information

24   to an indictment.  They serve the same function.  One is

25   brought by the grand jury, one is brought by the U.S.

1       attorney.

2           Do you understand that?

3               THE DEFENDANT:  Okay.

4               THE COURT:  All right.  And have you discussed

5       waiving your right to indictment by the grand jury with

6       Mr. West?

7               THE DEFENDANT:  Yes.

8               THE COURT:  All right.  Have any threats or promises

9       been made to you to induce you to waive indictment?

10              MR. WEST:  Other than the plea agreement, Your Honor?

11              THE COURT:  Well, other than, perhaps, the plea

12      agreement.

13              THE DEFENDANT:  Yeah.  My own opinion -- I have my

14      own opinion.  I consider a plea bargain, this whole justice

15      system, like, blackmail.  That's what I consider it.  So I

16      don't like the justice system.  I don't agree with it.  But

17      that's what it is.

18              THE COURT:  Well, I'm not forcing you to do anything.

19      You understand that?

20              THE DEFENDANT:  Yeah, I know, but I agreed to accept

21      a plea bargain because I don't want to have life in prison.  I

22      don't want other charges forever and ever and ever and ever.

23      I consider that like blackmail, but I agreed to accept it.

24              THE COURT:  You understand that any plea agreement is

25      kind of like a contract between you and the prosecutor.  I

9

1   don't -- the Court's not involved.  And in every plea

2   agreement, there are concessions by both sides.

3              THE DEFENDANT:  I don't agree to the whole concept of

4   plea agreements and the U.S. justice system.

5              THE COURT:  I can appreciate that.

6              THE DEFENDANT:  Okay.  That's just my opinion.

7              THE COURT:  We all have them.  That's why we're --

8              THE DEFENDANT:  I know I'm here, I'm in the --

9         (Indiscernible crosstalk.)

10             THE COURT:  In the United States, we can all have our

11  own opinions.

12             THE DEFENDANT:  That's why I left it, and I was

13  forced back here, and I didn't want to be back here.

14             THE COURT:  Where are you from, originally?

15             THE DEFENDANT:  Well, I'm from New Jersey.  But the

16  last 18 years, 76 percent of it, I lived out of the USA.

17             THE COURT:  76 percent.  How did you come up with

18  that?

19             THE DEFENDANT:  Yeah, in the last 18 years.  And I

20  considered myself retired, and I left USA.  I wasn't coming

21  back.

22        But they had a lot of political issues, a revolution and

23  changing presidents overseas in Egypt where I was, so they

24  were forcing Americans to not renew their visa.  So I had a

25  tourist visa so I had to leave Egypt.

1     I didn't have to come back to the United States, and I

2  wasn't planning on it.  My plan was -- when you see my

3  passport renewal, I put I might go to Thailand or USA, because

4  I was going to go volunteer and help the elephants in elephant

5  nature park.

6     But then what happened is a friend of mine, who's

7  Egyptian, who's in Ohio, knew I was crying -- I'm an American,

8  and was crying in Egypt because I didn't want to lose my two

9  dogs.  So he said -- I helped him get a job once so he was

10  trying to help repay the favor, and he bought me a little

11  cabin for $1,500 in Kentucky.  I'd never been to Kentucky but

12  I thought -- he bought me this cute little cabin so I

13  thought --

14          THE COURT:  That was in Maysville or in Mason --

15          THE DEFENDANT:  In Maysville.  What my plan was is to

16  make -- since I'm an American citizen on paper, I thought I

17  would make a temporary residency, because I'm getting old, I'm

18  almost going to be 60.  And I thought when I'm 60 --

19          THE COURT:  56, that's not very old.

20          THE DEFENDANT:  I'm 57.  So I thought, I'm going to

21  be 60 and 70, and I don't have no one to take care of me.  I

22  don't have, like, money for an old age home, and I thought I

23  could make a little cabin for an alternate shelter.

24     Because 14 years ago -- many years ago, in 2004, in a

25  divorce, I lost my house.  I had a $400,000 house.  I lost the

1    house, I lost everything, my pension after working 25 years at

2    AT&T.  I lost everything, and I became homeless --

3           THE COURT:  Slow down because, remember, everything

4    is being taken down.

5           THE DEFENDANT:  I'm sorry.  Okay.  I became homeless

6    in 2004 after a divorce.  I was sleeping in my car for a year.

7       So I retired to Egypt because I thought it was more

8    justice and fairness.  I felt I was being discriminated.  So

9    my friend told me he bought me this cabin, sent me a picture.

10      So I came back.  My intention was to come -- I agreed --

11    this second husband I got in Egypt, Islamic polygamy, I agreed

12    I would come to the United States for only three years.  He

13    wanted me five, and I said, no, only three.  I don't want to

14    be in America.

15      And I said, I'm Muslim.  I'd like to be in a Muslim

16    country.  I don't believe in their system, their justice

17    system.  I don't believe in it.  I think they're unfair and

18    they're discriminatory.

19      I went to ten countries, and I believe America was the

20    worst country.  In a ten list, my favorite countries I've

21    traveled, America is the worst; discriminatory, oppressive,

22    and it's a dictatorship, and I'm not happy with it.

23      And, unfortunately, I was born in this country.  And,

24    unfortunately, I have to -- so anyway, my plan was to go back.

25      So a year before I got indicted, I bought a ticket a year

1    ago before, and I was planning to go to Egypt on April 20th,

2    2016.  I had a ticket.

3         But three days before, I mentioned to the police that I

4    was going to be out of town.  I wanted them to watch my house.

5    I trusted them, and I told them to please watch my house so no

6    one steals anything when I'm gone.  I didn't know if I'm ever

7    coming back.  I was going to go and try to stay.  If I could

8    stay, I'll stay.  If I have to come back, because I'm a

9    citizen, I have to come back here, but I have a home to come

10   back to, but it had no heat.

11        So what happened was three days before I'm going to

12   leave, the police, I told them I'm leaving.  So I didn't know

13   the FBI was watching me.  So they told the FBI, and the FBI

14   came and seized my house.

15        And they didn't tell me I can't travel.  So three days

16   later, they stalked me, and they seen me flying, and they

17   stopped me, and they pulled my dogs off the plane.

18        Now my one dog is dead because of this whole thing.  So I

19   lost a lot of money.  I lost a lot of things.  I lost my dog,

20   who I loved, I had for seven years.  And I paid a lot of money

21   and got him through seizures.  He was having 45 seizures a day

22   for three days every month.  27 days, he was fine.  Three days

23   a month, he would have over 100 seizures, and I would sit

24   through them with him.  I didn't go out of the house.  I

25   stayed with him and now -- no one else could deal with that so

13

1    now they put him down.  He's been put to sleep.

2            MR. WEST:  We're going to focus on this now.

3            THE DEFENDANT:  I'm sorry.

4            THE COURT:  I appreciate that, Mr. West.

5            THE DEFENDANT:  I'm sorry.  I kind of ramble.

6            THE COURT:  You what, ma'am?

7            THE DEFENDANT:  I kind of ramble sometimes, my

8    psychological issues.

9            THE COURT:  I appreciate that.

10           THE DEFENDANT:  I'm on Prozac, but I didn't have my

11   Prozac this morning.

12           THE COURT:  Okay.

13           THE DEFENDANT:  They do it in the morning.  They

14   didn't do it in time for me to come so I didn't have my Prozac

15   this morning.

16           THE COURT:  Let's try to stay as focused as we can

17   while we're here.

18           THE DEFENDANT:  Okay.

19           THE COURT:  I can understand your beliefs and all of

20   that.  That's all well and good.

21           THE DEFENDANT:  Okay.

22           THE COURT:  Everybody is entitled to that.

23           THE DEFENDANT:  Thank you.

24           THE COURT:  I'm going to try to stay as focused as we

25   can --

14

1          THE DEFENDANT:  Okay.

2          THE COURT:  -- on the matter at hand.

3          THE DEFENDANT:  Okay.  I have no problem with

4     focusing.  Keep me focused.

5          THE COURT:  What I'm trying to get at first --

6          THE DEFENDANT:  Okay.

7          THE COURT:  -- is has anyone forced you to waive

8     indictment?  Has anyone said you've got to do this?  I mean,

9     it's ultimately your decision.

10         THE DEFENDANT:  Okay.  No one forced me to waive --

11         THE COURT:  So no one forced you to waive?

12         THE DEFENDANT:  No one forced me to waive the

13    indictment.

14         THE COURT:  Okay.  That's fine.  Did you sign the

15    waiver?

16         MR. WEST:  Not yet, Your Honor.

17         THE COURT:  All right.  Is it your intention to waive

18    the right to present the case to the grand jury and have the

19    case proceed against you via this criminal information, yes or

20    no?

21         THE DEFENDANT:  When you're saying the case, you're

22    saying the case in the plea bargain?

23         THE COURT:  This case here.

24         THE DEFENDANT:  The case in the plea bargain, okay.

25    Yes, I am.

1       THE COURT:  I would ask that you and your attorney

2   sign that waiver, and I will have that matter filed.

3       THE DEFENDANT:  Okay.

4       MR. WEST:  She signed the waiver in open court, Your

5   Honor.

6       THE COURT:  You did as well?

7       MR. WEST:  Yes, Your Honor.

8       THE COURT:  If you'd hand that to me.  Thank you.

9       The Court finds, after reviewing the defendant's rights

10  to presentment to the grand jury, that the waiver that she

11  signed is knowing and voluntarily made, and the Court will

12  accept it.

13      I also will sign the waiver, and I will order that the

14  waiver of indictment, the information, and any other pleadings

15  be filed of record.

16      Okay.  Your name is Marie Antoinette Castelli; is that

17  correct?

18      THE DEFENDANT:  That is correct.

19      THE COURT:  Okay.  And you are 57?

20      THE DEFENDANT:  I'm 57.

21      THE COURT:  Okay.  How much formal education do you

22  have?

23      THE DEFENDANT:  I did things backwards.  I worked at

24  AT&T 25 years.  And while I was working, they paid for

25  reimbursement so I started going to college not -- just one

1    class now and then.  It took me years, and I got an associate.

2    It maybe took five years, seven years, whatever.  But I got

3    associate.  Then I got a bachelor's.  And I never got further

4    than that, but I did get a master's certificate for project

5    management.

6              THE COURT:  So you have a bachelor's degree?

7              THE DEFENDANT:  I have a bachelor's degree in

8    computer science, and I did get a certificate for project

9    management.

10             THE COURT:  Where is your bachelor's degree from?

11   Where is it from?  Where?  What institution?

12             THE DEFENDANT:  My bachelor's was a weird thing.

13   It's in Albany, New York, upstate New York.

14             THE COURT:  Was SUNY Albany?

15             THE DEFENDANT:  It was called Regents College, and

16   they changed it to Excelsior College.

17             THE COURT:  Okay.  That's fine.

18             THE DEFENDANT:  Okay.

19             THE COURT:  So somewhere --

20             THE DEFENDANT:  It's a credit line.

21             THE COURT:  -- in upstate New York?

22             THE DEFENDANT:  You do it online.

23             THE COURT:  Now, you're taking Prozac, you said,

24   correct, but you didn't take it this morning?

25             THE DEFENDANT:  I didn't take what?

1        THE COURT:  You take Prozac but did not take it this

2    morning, correct?

3        THE DEFENDANT:  Yes.  I don't -- I've been taking

4    Prozac lately, but I don't always take it.  But, I mean, I've

5    been steady taking it now while I'm incarcerated.

6        THE COURT:  Mr. West, I know she's been evaluated.

7    I've reviewed that.  Since she's been evaluated and been back,

8    do you believe that she is competent to enter the plea?

9        MR. WEST:  I do, Your Honor.

10       THE COURT:  Mr. McBride?

11       MR. McBRIDE:  I do, Your Honor.

12       THE COURT:  Okay.  The Court agrees.  I find you

13   competent to enter the plea as well.  You do tend to ramble,

14   but we all ramble at times.

15       Now, I do want to read the information, formally read it.

16   It's only two counts.  And it charges, in Count 1, On or about

17   October 19, 2015, in Mason County, in the Eastern District of

18   Kentucky --

19       THE DEFENDANT:  Um-hmm.

20       THE COURT:  -- Marie Antoinette Castelli --

21       THE DEFENDANT:  Um-hmm.

22       THE COURT:  -- you don't need to respond.  I'm just

23   reading it to make sure you understand.

24       You can follow along.  You have a copy, right?

25       THE DEFENDANT:  Um-hmm.

1           THE COURT:  Okay.  You can follow along.  Marie

2   Antoinette Castelli, aiding and abetting others, did knowingly

3   transmit in interstate and foreign commerce, via the internet,

4   communications intended to be a threat to injure the person of

5   another; that is, social media posts stating, "a great sister

6   on twitter published addresses of the kafir" -- is it kafir or

7   kafir?

8           THE DEFENDANT:  Kafir.

9           THE COURT:  Kafir, I'm sorry.  "Kafir men who killed

10  sheikh awlaki" --

11          THE DEFENDANT:  Awlaki, Sheikh Awlaki.

12          THE COURT:  -- "Awlaki and his son with the drone

13  praying the mujahadine" -- correct?

14          THE DEFENDANT:  Um-hmm.

15          THE COURT:  -- "will send someone for justice" and

16  including a link to a publicly viewable document on the

17  internet referencing the Islamic state, describing victims 1,

18  2 and 3 and their families as targets, displaying their

19  photographs, and stating others should locate and execute

20  victim 1, all in violation of U.S. Code Section 875(c) and 2.

21      Count 2 alleges, On or about October 19, 2015, in Mason

22  County, in the Eastern District of Kentucky, Marie Antoinette

23  Castelli did knowingly transmit in interstate and foreign

24  commerce, via the internet, communications intended to be a

25  threat to injure the person of another; that is, social media

1    posts of the names and addresses of victims 1, 2 and 3, and

2    stating, "they make targets on our heads so here are their

3    heads for targets ..." all in violation of 18, U.S. Code,

4    Section 875(c).

5        Signed by Robert McBride for the U.S. attorney, Robert

6    Duncan.

7        Now, that is the formal charge -- formal charges.

8        Do you understand that?

9            MR. WEST:  Do you understand that?

10           THE DEFENDANT:  Yes, I understand that.

11           THE COURT:  Okay.  Now, Mr. West was previously

12   appointed to represent you some time ago in the other case.

13   Are you satisfied with the advice and representation he's

14   provided to you during his representation of you?  Talking now

15   about your lawyer.

16           THE DEFENDANT:  Oh, I'm sorry.  I just -- okay.  What

17   did you say?  I'm sorry.

18           THE COURT:  Let's focus on the questions and answers.

19           THE DEFENDANT:  Yeah.  I saw something that's wrong,

20   but go ahead.

21           THE COURT:  I appreciate that, and I can take

22   judicial notice of the fact that you don't like the process

23   and the proceedings.

24           THE DEFENDANT:  No, I never -- okay.

25           THE COURT:  I'm asking now about Mr. West.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Has he provided adequate representation

3    for you, in your view?

4          THE DEFENDANT:  Yes, he's -- I don't like lawyers and

5    judge and the system, but he's -- I don't like any lawyers, so

6    it's not against him.  He's pretty good for a lawyer.

7          THE COURT:  That's a high compliment from you, then,

8    since you don't like lawyers.

9          THE DEFENDANT:  Yeah, it's a good compliment.  Yeah,

10   yeah.

11         THE COURT:  Has he done everything you've asked him

12   to do?

13         THE DEFENDANT:  He's pretty decent for a lawyer.

14         THE COURT:  You didn't answer my question.  Has he

15   done everything you've asked him to do here?

16         THE DEFENDANT:  Yes, he has, I guess.

17         THE COURT:  Okay.

18         THE DEFENDANT:  Yeah, yeah.  I especially like he

19   helped me try to save my dog's life.  That was the biggest

20   thing he did for me that I will never be able to appreciate.

21         THE COURT:  And that's beyond the scope of his

22   representation of you in this case.

23         THE DEFENDANT:  Yes, yes.  But that's the most

24   important to me.

25         THE COURT:  Okay.  Well, then, thank you for doing

1     that.

2          Okay.  Now, I referenced the plea agreement previously.

3          Mr. McBride, if you could give me, from the United

4     States' perspective -- and the plea agreement wasn't signed by

5     you, the one I have.  It's not signed.

6               MR. McBRIDE:  My oversight.  I'm sorry, Judge.

7               THE COURT:  Would you go ahead and sign this?

8               MR. McBRIDE:  May I approach?

9               THE COURT:  Sure.

10              MR. McBRIDE:  Thank you, Judge.

11              THE COURT:  All right.  Now the plea agreement I have

12    is five pages, and I was getting ready to ask Mr. McBride why

13    this binding plea agreement is in the best interest of not

14    only the United States but justice generally, in your view.

15              MR. McBRIDE:  Your Honor, the guidelines for these

16    charges are very high because of the nature of these events

17    here.

18          However, there is some mitigation with regard to

19    Ms. Castelli; her life situation, the mental health issues

20    that she suffers from, which we believe it's somewhat

21    compulsive behavior that contributed to her conduct.

22          For the United States, this resolves the case in a way

23    that had we proceeded further in this case, we likely would

24    have had to use CIPA procedures to protect classified

25    information, which this solved that problem.

22

1      We also believe, Your Honor, that if you look at the

2    3553(a) factors, character of Ms. Castelli, what she is

3    charged with, how it went about, the fact that, as far as we

4    know, there was no actual violence as a result of her conduct,

5    we believe this is an appropriate resolution of the case.

6      She will -- we believe it will promote respect for the

7    law, perhaps not from Ms. Castelli in the American system, but

8    certainly for others who are similarly situated.

9      This is a phenomenon that's beginning to happen in the

10   United States.

11          THE COURT:  Okay.  Mr. West, now, this is clearly,

12   based upon the Court's review of what Probation provided me,

13   clearly a very favorable result.

14      The plea agreement calls for a recommended sentence of 90

15   months, and that would be on Counts 1 and 2, concurrently with

16   each other; is that right?

17          MR. McBRIDE:  Yes, Your Honor.

18          THE COURT:  And the guideline recommendations, based

19   upon the sentencing guidelines, are three times that.

20      So, I mean, obviously, you've spoken to your client about

21   that.

22          MR. WEST:  I have, Your Honor.

23          THE COURT:  I mean, do you view this as the most

24   favorable result you possibly could have imagined, absent a

25   dismissal?

1          MR. WEST:  Yes, Your Honor.

2          THE COURT:  Okay.  Well, I'm satisfied from hearing

3    from the attorneys.

4      I just noticed something just from a housekeeping

5    standpoint.  The plea agreement consists of five pages.  The

6    fifth page has paragraphs 9, 10, and then 12.  There's no

7    paragraph 11.  I didn't know if -- there wasn't supposed to be

8    one, was there, Mr. McBride?

9          MR. McBRIDE:  There isn't, Your Honor.

10         THE COURT:  Okay.  I'm just going to renumber that as

11   paragraph 11 and put my initials next to that.

12     Okay.  So according to this plea agreement, the defendant

13   is going to be entering a guilty plea to the two-count

14   information that I just read.

15     In exchange, the United States will move to dismiss the

16   prior case, which is Indictment Number 15-33.  It's a binding

17   plea agreement.  If I accept the agreement, the Court will

18   sentence her to a 90-month sentence.

19     There are a series of facts at paragraph 3A, B, C, D, and

20   E of the plea agreement.

21     The statutory penalty for both of these counts is five

22   years' imprisonment -- now, that's a maximum term of five

23   years.  So the 90 months would be 60 on one and 30 on the

24   other?

25         MR. McBRIDE:  Correct, Your Honor.

1          THE COURT:  Is that your understanding how that will

2    be stacked?

3          MR. WEST:  That works.

4          THE COURT:  I mean, I can't exceed 60 on either one.

5    But based upon the intention of the parties being a 90-month

6    sentence, that would be how the Court would structure that to

7    achieve what you're recommending here.

8          MR. McBRIDE:  Your Honor, actually, based on the

9    facts, that actually makes sense.

10         MR. WEST:  Yes, Your Honor.

11         THE COURT:  Count 1 is more serious than Count 2,

12   just in your view?

13         MR. McBRIDE:  In my view, yes, sir.

14         THE COURT:  Okay.  Now, there's also a fine maximum

15   of $250,000, a three-year term of supervised release, and a

16   $100 special assessment per count.

17      Do you understand, ma'am, that the statutory maximum

18   penalties are those that I have described in paragraph 4 of

19   your plea agreement?

20         THE DEFENDANT:  Yes, that's what I've read in the

21   indictment and stuff.  Um-hmm.

22         THE COURT:  Pardon?

23         THE DEFENDANT:  Yes, that's what I've read, um-hmm.

24         THE COURT:  All right.  Now, paragraph 6 contains an

25   appellate waiver.  You are not going to be able to appeal your

1    guilty plea, conviction, or sentence pursuant to paragraph 6

2    of this plea agreement.

3        Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Now, have you spoken with Mr. West about

6    paragraph 6?

7            THE DEFENDANT:  About what?

8            THE COURT:  Have you spoken to your lawyer about this

9    particular paragraph?

10           THE DEFENDANT:  Yes, I have.  Yes, I have.

11           THE COURT:  Now, the second sentence of that -- and I

12   want to make sure you understand what that is, because that's

13   kind of some legalese.

14       It says, "Except for claims of ineffective assistance of

15   counsel, the defendant also waives the right to attack

16   collaterally the guilty plea, conviction, and sentence."

17       Now, that is a separate waiver involving what's referred

18   to as a 2255 motion.  It's a motion to vacate, a habeas corpus

19   type petition, something that you would file post-judgment,

20   after you're sentenced.

21       You're beginning to serve your sentence, and you decide,

22   after speaking with some other folks in the facility in which

23   you're serving your sentence that, by golly, I want to

24   challenge my conviction.  I want to tell everybody why I

25   shouldn't have been convicted.

1     Other than claims that your lawyer, who you just said did

2     a great job for you; in fact, he helped you with your dog, and

3     you don't like lawyers, but he's done a pretty good job for

4     you.  Other than a claim that he was constitutionally

5     ineffective, which is a pretty high standard, other than that

6     sole claim, you're not going to be able to challenge your

7     conviction and sentence on any other ground later.

8          Do you understand that?

9               THE DEFENDANT:  Okay.  Um-hmm.

10              THE COURT:  Now, that's what that means.

11              THE DEFENDANT:  Okay.

12              THE COURT:  And you understand that?

13              THE DEFENDANT:  Um-hmm.

14              THE COURT:  Yes?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Okay.  All right.  Good.  I just want to

17    make sure because a lot of people file it anyway later.

18              THE DEFENDANT:  Right.

19              THE COURT:  But I want to make sure you understand

20    that if you file that, and it's not claiming that Mr. West was

21    an ineffective lawyer on your behalf, that's going to be

22    dismissed immediately because it's not something that you're

23    able to do because you're specifically waiving that here.

24         Do you understand that?

25              THE DEFENDANT:  Yes.

1          THE COURT:  Okay, fair enough.  I'll move on, then.

2          THE DEFENDANT:  I feel strongly, I don't like -- in

3    America, I don't like how everyone sues everyone.  I don't

4    like that.

5          THE COURT:  Let me tell you, you and I agree about

6    that.

7          THE DEFENDANT:  I don't like that.  I'm not, like,

8    out to see who I can sue and stuff.  I hate that.  So I don't

9    plan -- that's not my intention at all.

10         THE COURT:  Fair enough.  I think that's a great --

11         THE DEFENDANT:  Thank you.

12         THE COURT:  -- great idea.

13    Okay.  Paragraph 7, would you explain that?  That's not

14    something I'm used to seeing, Mr. McBride, paragraph 7 of this

15    plea agreement, regarding FOIA.

16         MR. McBRIDE:  Yes, Your Honor.  She's essentially

17    waiving the right to file a FOIA request with the federal

18    government.

19         THE COURT:  As it relates to this case?

20         MR. McBRIDE:  Yes, Your Honor.

21         THE COURT:  Okay.  Do you understand that?

22         MR. WEST:  Do you understand paragraph 7?

23         THE DEFENDANT:  Oh.

24         THE COURT:  You're waiving your right to file any

25    FOIA request regarding records pertaining to this case.

1    THE DEFENDANT:  To the case, yeah, okay.  Yes.

2    THE COURT:  All right.  Is that kind of the sum and

3    substance of the agreement?

4    MR. McBRIDE:  It is, Your Honor.  The other

5    paragraphs are all stock components of a plea agreement.

6    I think that's an accurate reflection of the core

7    components, Your Honor.

8    THE COURT:  All right.

9    THE DEFENDANT:  I'm okay with that.  I'm just not

10   okay with this.

11   MR. WEST:  Your Honor, could we go back a little bit

12   on the information?

13   THE COURT:  Sure.

14   MR. WEST:  May I consult with the government for just

15   a minute?

16   THE COURT:  Sure, that's fine.

17   (Mr. West and Mr. McBride conferring.)

18   MR. WEST:  Your Honor, in the information, there was

19   some verbiage in the information that my client had questions

20   about.  I've discussed it with the government, and if we could

21   make an amendment to the information.

22   THE COURT:  I'm going to give it back to you.  The

23   United States attorney is authorized to make amendments to the

24   particulars of the charge, if he wishes.

25   MR. WEST:  It doesn't change the charge at all.

1          THE COURT:  You can go ahead give him the

2     information.

3          Thank you, Mike.

4          MR. McBRIDE:  Judge, just for the record, the

5     language that Ms. Castelli objects to is in Count 1, six

6     sentences down from where her name appears in the middle.  It

7     reads, "and including a link to a publicly viewable document

8     on the internet referencing the Islamic state."

9          According to Ms. Castelli, she doesn't believe the

10    Islamic state existed at the time she made these statements so

11    I have agreed that we will strike referencing the Islamic

12    state.  I don't believe it impacts the substance or the

13    viability of that count.

14          THE COURT:  All right.  Fair enough.

15          MR. WEST:  And Your Honor --

16          THE COURT:  It's brought by the U.S. attorney so you

17    have the authorization to change that.

18          MR. McBRIDE:  Yes, Your Honor.

19          MR. WEST:  My client's in agreement with that and has

20    initialed that change, and I have initialed that change.

21          MR. McBRIDE:  And I will do the same, Your Honor.

22          THE COURT:  All right.  I will do the same as well.

23          MR. WEST:  Thank you, Your Honor.

24          THE COURT:  You're welcome.

25          Ma'am, other than the fact that you have previously

1   stated that you don't believe in our justice system, don't

2   like lawyers, don't like judges, et cetera, and feel like

3   you're being blackmailed, as you described --

4               THE DEFENDANT:  Yes, um-hmm.

5               THE COURT:  -- has someone threatened you

6   individually?  An agent, your lawyer, the marshal, someone on

7   the street, someone in the jail forced you to plead guilty?

8   Has anyone done that?

9               THE DEFENDANT:  I don't -- nobody forced me.  I just

10  felt pressured because if I don't, they would make new

11  threats, and they just are out to get me, I feel.  And I feel

12  like if they can't get me with one charge, they'll just make

13  another charge.  They can't get me with that charge, they'll

14  make another charge, another charge.

15     I believe that the whole thing was a fishing expedition

16  because the charge was before they even opened an

17  investigation on me.

18              THE COURT:  Let me stop you.  I'm asking a specific

19  question.

20              THE DEFENDANT:  Okay.

21              THE COURT:  I found you to be competent earlier.

22              THE DEFENDANT:  Okay.

23              THE COURT:  You sound like you are a smart

24  individual.  You have a lot of information in your head.

25              THE DEFENDANT:  Yes.

1           THE COURT:  I'm asking more of a simple question.

2           THE DEFENDANT:  Okay.

3           THE COURT:  You have a right, as an adult, to make an

4   informed decision.

5           THE DEFENDANT:  Um-hmm.

6           THE COURT:  You can decide, you know what?  I want to

7   go to trial, which is certainly fine, and I'll go through your

8   trial rights here in a little bit.

9           THE DEFENDANT:  Um-hmm.

10          THE COURT:  But you are making a decision, like many

11  defendants do in courts throughout the United States --

12          THE DEFENDANT:  Uh-huh.

13          THE COURT:  -- federal and state that, you know what?

14  I don't want to spend the rest of my life in jail.  I'm being

15  offered a plea agreement to a seven and a half year sentence,

16  90 months --

17          THE DEFENDANT:  Uh-huh.

18          THE COURT:  And I think that, you know what, based

19  upon that agreement or concession, if you will --

20          THE DEFENDANT:  Um-hmm.

21          THE COURT:  -- I think that's in my best interest.

22  That's what I'm asking.

23       First of all --

24          THE DEFENDANT:  Okay.

25          THE COURT:  -- no one's forcing you to do this?

1    You don't want to do it --

2         THE DEFENDANT:  Yeah, of course.

3         THE COURT:  -- but you're making a conscious choice,

4    are you not, today to enter this guilty plea to this

5    information?  Is that correct?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Okay.

8         THE DEFENDANT:  I made a choice because what I --

9    what I truly believe, I don't think I can prove it, I actually

10   honestly believe -- I don't remember exactly posting that

11   thing.  But the thing is, I've seen in their discovery, I've

12   seen some evidence that showed me that my laptop did not post

13   it at all.  There's no evidence from the software --

14        THE COURT:  We're going to get to that --

15        THE DEFENDANT:  Okay.

16        THE COURT:  -- in a little bit.

17        THE DEFENDANT:  Okay.  I think the FBI did an

18   entrapment.  I think they posted it because they were stalking

19   me at the --

20        THE COURT:  I'm going to ask you right now --

21        THE DEFENDANT:  Okay.

22        THE COURT:  -- to just kind of answer the question

23   and not ramble as much.

24        THE DEFENDANT:  Okay.

25        THE COURT:  Because the more you say, it may lead

1   to --

2          THE DEFENDANT:  Oh, a problem, okay.

3          THE COURT:  -- something you don't want.

4          THE DEFENDANT:  Okay.  Well, I just decided that

5   after I had the plea bargain and the discussions, options I

6   have, that it's just -- I'm in defeat.  I'm defeated so I just

7   said okay, I accept it.

8          THE COURT:  Okay.  But no one is forcing you --

9          THE DEFENDANT:  No one forced me to change my mind

10  because my original thing, I was going to pursue it.  But --

11         THE COURT:  You've changed your mind, and now you

12  want to plead guilty?

13         THE DEFENDANT:  Yeah, I changed my mind.  I thought

14  per the evidence that I could prove that I didn't post it, but

15  I decided -- I did decide to accept this plea agreement.

16         THE COURT:  Okay.  We'll get to the facts in a

17  moment.

18         THE DEFENDANT:  I'm trying to be honest.  I'm really

19  an honest person.  I like to -- I'm trying to --

20         THE COURT:  The question was such a simple one.  No

21  one has forced you to enter this plea.  You've answered that.

22  No one has.

23         THE DEFENDANT:  Okay, okay.

24         THE COURT:  All right.  Now, is restitution an issue

25  in this matter, Mr. McBride?

34

1        MR. McBRIDE:  No, Your Honor.

2        THE COURT:  Your understanding as well, Mr. West?

3        MR. WEST:  That's my understanding, Your Honor.

4        THE COURT:  All right.  Now, we've already gone over

5    the fact that this is a binding agreement.  Once I accept it,

6    I have to sentence you to the 90 months that has been

7    recommended, and that will be 60 months on Count 1, 30 months

8    on Count 2, consecutive, for a total sentence of 90 months.

9        Now, given the nature of the charges, Mr. McBride --

10        MR. McBRIDE:  Yes, Your Honor.

11        THE COURT:  -- as far as a presentence report, what

12    is your position on that?

13        MR. McBRIDE:  Your Honor, given it's a binding plea

14    and I think the biographical information is fairly easy to

15    obtain or, frankly, is known to the Court, depending on the

16    Court's desire, we do not have a huge desire for a PSR, and we

17    would waive a -- we would not object to short PSR, Your Honor.

18        THE COURT:  Well, I can do a sentencing memorandum.

19    The probation officer asked, if we were going to do a full

20    presentence report, to have a sentencing date in late March.

21        My thought process for this -- and I think I'm up to now

22    two hands for binding plea agreements in 16 years.

23        MR. McBRIDE:  Yes, Your Honor.  We try not to bring

24    them to you.

25        THE COURT:  I understand.  In about half of those

cases, I have waived a presentence report and asked for a kind

of a truncated sentencing memorandum, which is much shorter.

        In the other half, I've just sentenced after the plea.

        Now, I have the evaluation that was previously done in

the other case.  I have information that the probation officer

prepared from the beginning regarding bond and detention, but

I don't know if doing that is appropriate here because there's

probably a little bit more from a security standpoint for her

within the facilities that would need to be done, kind of

legwork for that.

        I'm just trying to get your view on that.

        MR. McBRIDE:  From that point of view, Judge, that

probably makes sense to do a full PSR because of the kind of

facility she may be sent to and what security precautions that

may need to be taken on her behalf.

        THE COURT:  Mr. West, I hadn't really thought about

it until we got to this point in the colloquy, but what's your

position on that?

        MR. WEST:  Our position is, and I think we had an

agreement with the government that we would recommend a

designation to the medical facility in Lexington.

        THE COURT:  I can certainly make that part of the

judgment.  Absolutely.

        MR. WEST:  My client has some significant mental

health issues that need to be addressed that aren't, in our

1   opinion, being adequately addressed by the Campbell County

2   Detention Center at this point.

3        THE COURT:  Well, frankly --

4        MR. WEST:  So my point, Your Honor, is anything we

5   can do to expedite this process, whether the Court requires a

6   PSR, maybe a shortened PSR or a sentencing memorandum, like

7   you suggested, we would be amenable to that.

8        Anything to facilitate the transfer of my client to a

9   medical facility sooner, rather than the entire four months,

10  would be appreciated.

11       MR. McBRIDE:  We have no objection to that, Judge.

12  Frankly, if you wanted to sentence her today, we would have no

13  objection to that.

14       THE COURT:  What's your position to that?

15       MR. WEST:  I wouldn't be opposed to it.  It's a

16  binding plea agreement.

17       THE COURT:  Can I speak to the probation officer?

18       (Off-the-record discussion.)

19       MR. McBRIDE:  Judge, if I may, and I apologize.

20  After speaking with the case agent, there are some legitimate

21  concerns about security and what the BOP needs to know about

22  Ms. Castelli's conviction.

23       I do think that can be done in an abbreviated PSR.

24       THE COURT:  So you would not prefer to have her

25  sentenced today?

1          MR. McBRIDE:  Yes, Your Honor.

2          THE COURT:  All right.  I was giving that serious

3     consideration.

4          MR. McBRIDE:  I apologize.

5          THE COURT:  Given the fact that we have a binding

6     plea agreement and a binding sentence.

7          MR. McBRIDE:  Yes, Judge.

8          THE COURT:  Okay.  Let me just turn now to your jury

9     rights.

10         Here in federal court, anywhere in the United States,

11    individuals who are charged with felonies, and a felony is

12    defined as any crime which carries a sentence of a year or

13    more -- I guess more than a year, technically, which both of

14    these are, you're entitled to a jury trial.

15         A jury trial would consist of the following --

16         THE DEFENDANT:  Um-hmm.

17         THE COURT:  We would have a number of jurors brought

18    in to court.  You would be presumed innocent at trial.  The

19    United States would have to produce evidence beyond a

20    reasonable doubt before you could be found guilty of either of

21    these charges.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  At a trial, your attorney,

25    Mr. West, would be present throughout the proceeding with you.

38

1      Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Mr. West has a right to cross-examine or

4      question every witness called by the United States.

5      Do you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  You have a right, through your lawyer, to

8      have Mr. West subpoena witnesses; that is, have the Court

9      order them to come to court to testify in your behalf.  You

10     have a right to have him do that on your behalf at trial.

11     Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  But by pleading guilty, you're waiving

14     that right as well.

15     Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  At trial, you have a right to testify.

18     Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  You also have a right to remain silent.

21          THE DEFENDANT:  Yes.

22          THE COURT:  You don't have to testify.

23     Understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And if you chose not to testify, I would

1    tell the jurors it would be completely improper for them to

2    consider your silence in any way in determining whether or not

3    you were guilty.

4        Understand?

5        They couldn't draw an adverse inference from your

6    silence.  That's what I mean.

7            THE DEFENDANT:  Oh, okay.  Yes, I understand.  Thank

8    you for clarifying.

9            THE COURT:  By pleading guilty, you're waiving your

10   right to a jury trial as I've described it to you here.

11       Understand?

12           THE DEFENDANT:  Yes.

13           THE COURT:  There won't be a trial.

14           THE DEFENDANT:  Yes.

15           THE COURT:  And you're going to need to admit the

16   facts of this plea agreement so I can accept the plea.

17       Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Okay.  Fair enough.

20       Now, one more thing.  There is no parole in federal court

21   so if you are sentenced to a term of imprisonment, you're not

22   going to be subject to early release on parole.

23       Understand?

24           THE DEFENDANT:  Yes.

25           THE COURT:  You've gone over that with her, Mr. West?

1      THE DEFENDANT:  I didn't understand it, but now I do,

2  okay.

3      MR. WEST:  I have, Your Honor.

4      THE COURT:  And I already went through this waiver of

5  appeal in paragraph 6.  And I do find, after discussing that

6  previously with her, that the waivers in paragraph 6 are

7  knowing and voluntary and that she understands the

8  consequences of both waivers.

9      I further find that after discussing the waivers in

10 paragraph 7 regarding the FOIA request that we discussed

11 earlier, that waiver is also knowing and voluntary and that

12 she understands the consequences of that waiver.

13     Okay.  Now, the information, as amended -- we've taken

14 out the reference to the Islamic state -- has, at paragraph 2,

15 the plea agreement at paragraph 2 sets forth what would need

16 to be proven beyond a reasonable doubt before you could be

17 found guilty of Counts 1 and 2.

18     Have you reviewed those with Mr. West?

19     THE DEFENDANT:  Yes.

20     THE COURT:  All right.  Now, at this point,

21 Mr. McBride -- before I do that, let me just ask you, ma'am,

22 paragraph 3, and I referenced it earlier, contains one, two,

23 three, four, five subparagraphs, paragraph 3A, 3B, 3C, 3D, and

24 3E.  Have you reviewed those facts set forth in the plea

25 agreement at paragraph 3 with Mr. West?

1      THE DEFENDANT:  Yes.

2      THE COURT:  All right.  And Mr. McBride, what do you

3  believe at this point would be the best use of the resources

4  of the Court going through this portion of the proceeding this

5  morning?

6      MR. McBRIDE:  My recommendation, Your Honor, would be

7  that you ask Ms. Castelli if she understands those paragraphs

8  and if she believes the United States could prove the evidence

9  in -- prove the facts that are set forth in the subparagraphs

10  under paragraph 3.

11      THE COURT:  All right.  Mr. West?

12      MR. WEST:  I'm agreeable with that approach.

13      THE COURT:  All right.  So paragraph 3A on page 2 of

14  the plea agreement, you've already indicated you reviewed

15  that; is that accurate?

16      THE DEFENDANT:  As I explained to you, I am a citizen

17  of the USA.  I was born here, even though I did live --

18      THE COURT:  I understand, I understand.  I'm just

19  asking -- you don't need to -- I'm trying to get --

20      THE DEFENDANT:  Yes.

21      THE COURT:  And, frankly, if I have to spend another

22  hour with you, I will.

23      THE DEFENDANT:  Okay.

24      THE COURT:  I've got another proceeding at 10:00.

25  I'm not in any hurry.

42

1        THE DEFENDANT:  Okay.

2        THE COURT:  I'm just trying -- as I like to tell

3   my -- well, not anymore, because they're a little older.  As I

4   used to tell my kids, we're trying to keep the train on the

5   tracks.

6        THE DEFENDANT:  Okay.

7        THE COURT:  Trying to keep our -- have you ever --

8   well, you know how sometimes horses have blinkers on?

9        THE DEFENDANT:  Yeah, okay.  I know.

10        THE COURT:  I'm trying to keep those blinkers on here

11   so that everything that's kind of out here stays out there,

12   and we can focus on the matter at hand.

13        THE DEFENDANT:  Uh-huh.

14        THE COURT:  So that's why I'm asking more specific

15   questions.

16        THE DEFENDANT:  Can I just ask one question?

17        THE COURT:  Sure.

18        THE DEFENDANT:  There's a law called KRS 2.010 that

19   says --

20        THE COURT:  I'm sorry.  What?

21        THE DEFENDANT:  KRS 2.010.  And I was curious, it

22   says what a definition of a residence is, if you have

23   intention of long-term living there.  And I told you my

24   intention was three years to stay in Kentucky.  I was going

25   back out of America.  So does that mean I'm a resident of

43

1    Kentucky or not a resident?  I own a house --

2              THE COURT:  I don't think it really matters.

3              THE DEFENDANT:  Okay.  So I just didn't know, because

4    I didn't want to say I'm a resident when I'm not legally a

5    resident.  I don't know about that law.  So okay.

6              THE COURT:  Well, did you reside -- did you live in

7    Maysville in 2015; particularly, October of 2015?

8              THE DEFENDANT:  Yes, I did.  I owned a --

9              THE COURT:  Whether you resided or lived there, it

10   really doesn't matter.

11             THE DEFENDANT:  Okay, okay.  I just wanted to know

12   because I don't want to say yes and lie.  So okay.

13             THE COURT:  I don't want you to lie.

14             THE DEFENDANT:  Okay.  Thank you.

15             THE COURT:  Paragraph 3B, you previously reviewed

16   that.  Do you believe that the United States would be able to

17   prove that, if this case went to trial, beyond a reasonable

18   doubt?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.  Paragraph 3C, do you believe the

21   government could prove that if you went to trial?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Okay.  Paragraph 3D, same question.

24        Do you believe they would be able to prove that beyond a

25   reasonable doubt?

1        THE DEFENDANT:  From your evidence, it looks like it

2    was posted on the IP.  I just question my laptop didn't seem

3    to have proof of that, but -- and the Facebook returns.  But

4    okay.  I agree.

5        THE COURT:  And, Mr. West, did you go through the

6    discovery that was provided to you by the United States?

7        MR. WEST:  In great detail.

8        THE COURT:  Is that correct?  He went through the

9    discovery with you, ma'am?  Ms. Castelli?

10        THE DEFENDANT:  Do what?

11        THE COURT:  The discovery, all that evidence --

12        THE DEFENDANT:  Yes, yes.

13        THE COURT:  -- you referenced?

14     Okay.  And finally --

15        MR. McBRIDE:  If I may, Judge, just on that point,

16    the discovery was provided to Mr. West and made available to

17    Ms. Castelli on a computer in the Campbell County Jail

18    facility, and she was permitted time to review it herself

19    also.

20        THE COURT:  Is that accurate?

21        THE DEFENDANT:  Yes.

22        MR. WEST:  It is accurate.

23        THE COURT:  And that was provided -- I guess

24    Magistrate Smith kind of spearheaded that; isn't that right?

25        MR. WEST:  Yes, Your Honor.  She did a great job

1    helping us address the voluminous discovery.

2            THE COURT:  All right.  And, finally, paragraph 3E,

3    do you acknowledge that those facts would be proven beyond a

4    reasonable doubt?  That's the last factual paragraph.

5            THE DEFENDANT:  Yes, um-hmm.  Yes, it seems like it,

6    yeah, from what I've seen in discovery.  My memory's a little

7    vague, but yes.  From their discovery, it seems like these

8    posts were made.  So I don't remember, because my mother just

9    died three days before the post.  My mother died October of

10   2015, three days before this.

11           THE COURT:  Your mother died on October 16?

12           THE DEFENDANT:  The 15th, she was buried in New

13   Jersey, and I drove 12 hours with two dogs to her funeral.  I

14   just came back, and I looked at the news, and I might have

15   posted it.  I don't remember it, really, because I was

16   depressed about my mother just died.  I buried her.

17           THE COURT:  But you acknowledge that the government

18   could prove those facts beyond a reasonable doubt?

19           THE DEFENDANT:  Yes.  It looks like they seem -- the

20   posts were made at that IP, and someone else's Facebook that I

21   used.  So it looks like --

22           THE COURT:  That you used, okay.  Fair enough.

23       Let me ask, you acknowledge that by using these posts,

24   they would have been transmitted in interstate commerce via

25   the internet, just based on --

46

1      THE DEFENDANT:  Yes.

2      THE COURT:  -- how technology works?

3      THE DEFENDANT:  Yes.

4      THE COURT:  And you also acknowledge the content of

5  those postings as set forth in the plea agreement?

6      THE DEFENDANT:  Yes.

7      THE COURT:  Fair enough.  Sufficient factual basis?

8      MR. McBRIDE:  Yes, Your Honor.

9      MR. WEST:  Yes, Your Honor.

10      THE COURT:  All right.  How do you plead to the

11  charge in Count 1, Ms. Castelli, guilty or not guilty?

12      THE DEFENDANT:  I plead guilty.

13      THE COURT:  And how do you plead to the charge in

14  Count 2, ma'am, guilty or not guilty?

15      THE DEFENDANT:  It's the same charge, yes.

16      THE COURT:  Count 2 of the information that I read to

17  you earlier, how do you plead to that?

18      THE DEFENDANT:  Yes, guilty.

19      THE COURT:  Guilty, all right.

20    Here is the information and the waiver, Madam Clerk.  I

21  also will accept and approve the plea agreement.

22    After reviewing the contents of the agreement and

23  discussing the matter with counsel and after hearing from the

24  defendant this morning, I find that it's a reasonable

25  disposition of this matter.

1        The United States' motion to dismiss the other case, you

2    can make that at the time of sentencing.

3            MR. McBRIDE:  Yes, sir.

4            THE COURT:  All right.  Now, here's what I'm going to

5    do.  I am going to order a presentence report.  Because we

6    have a binding plea agreement with a binding sentence, if,

7    when the presentence report is available, if there are no

8    objections to the report, I will be amenable to Mr. West

9    asking the Court to advance the sentencing to a date on my

10   docket that would be available.

11       I will tell you, and I know Mr. McBride knows this, I'm

12   starting to take all the criminal cases here in Covington so

13   the docket is getting heavier so we'll just have to find a

14   date and time that works.

15       For now, I'm going to give you a March date.  We can move

16   that up, if necessary.  Friday, March 23rd.  Would you be

17   available then?

18           MR. McBRIDE:  Yes, Your Honor.

19           MR. WEST:  I believe I'm available, Your Honor, but

20   I'm just booting up my phone.

21           THE COURT:  That's fine.  And that would be in the

22   morning, if that's possible, 10:00 a.m.

23           MR. McBRIDE:  I have nothing on my calendar at all

24   that day.

25           THE COURT:  Okay.

1          MR. WEST:  Your Honor, that will work.

2          THE COURT:  What will happen, even though the

3    sentence is a binding sentence, I've accepted the agreement,

4    when you are sentenced, you'll receive a sentence of 90

5    months; 60 on Count 1, 30 on Count 2, consecutive, for a total

6    of 90 months.  That's been resolved.

7          But what needs to happen next is the probation officer,

8    it's either going to be Michelle Studer here or Kim Heidel or

9    John D'Alessandro, one of the probation officers will come to

10   the jail, interview you with your lawyer present.

11         The interview will be designed to obtain information

12   about you and medical issues you have.  We already know about

13   your mental health concerns.  Your background, your work

14   history, your education history, criminal history if you have

15   any, the offense conduct.  It's called a presentence report.

16         That report is prepared.  About five weeks before

17   sentencing, the lawyers will get a copy.  Mr. West will go

18   over it with you.  If there's anything you object to, he'll

19   notify the probation officer.  If there are no objections, he

20   can notify Probation as well, and I would encourage him to do

21   that, because then I can move the sentencing up.

22         The United States has an opportunity to object as well.

23         So while the sentence itself is not going to change by

24   virtue of the presentence report, information that is

25   necessary for your designation -- so that if I recommend

1   Lexington, Kentucky Federal Medical Center, there needs to be

2   some information in the presentence report to support that

3   designation.  So it will be important for you to cooperate

4   with the probation officer so that they can make sure that

5   relevant information is in that report.

6       Do you understand all of that?

7           THE DEFENDANT:  Okay.

8           THE COURT:  Will you cooperate with Probation?

9           THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Very well.  I will vacate the

11  current pretrial date and trial date in the other case, the

12  16-33 matter.

13      What else today in this matter?

14          MR. McBRIDE:  Your Honor, I can't see anything else

15  we need to cover.  Ms. Castelli is detained.  She should

16  remain so.

17          THE COURT:  Mr. West?

18          MR. WEST:  I see no other issues, Your Honor.  Thank

19  you.

20          THE COURT:  Ma'am, I know we spent quite a bit of

21  time this morning.  I want to make sure that all the answers

22  you've previously given have been truthful.  Is that right?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you have any questions for me?

25          THE DEFENDANT:  Not that I can think of right now.

50

1    Thank you.

2             THE COURT:  Have you understood all of my questions?

3             THE DEFENDANT:  Yes, I have, and I apologize.  I kind

4    of delay.  I talk.  I'm detailed.  I can't help it.  I'm sorry

5    about that.

6             THE COURT:  You don't need to apologize at all.  I

7    just want to make sure all of my questions are clear, and you

8    understood all of them.

9             THE DEFENDANT:  Yeah, I appreciate -- you clarified a

10   lot of things so thank you.

11            THE COURT:  Very well.  Defendant will be remanded to

12   custody of the marshal.

13       We'll be in recess until 10:15.

14       (Proceedings concluded at 10:10 a.m.)

15                            - - -

16                   C E R T I F I C A T E

17            I, LISA REED WIESMAN RDR-CRR, certify that the
     foregoing is a correct transcript from the record of
18   proceedings in the above-entitled case.

19

20   _\s\ Lisa Reed Wiesman_              May 23, 2019
     LISA REED WIESMAN, RDR-CRR        Date of Certification
21   Official Court Reporter

22

23

24

25