1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                  NORTHERN DIVISION AT COVINGTON


UNITED STATES OF AMERICA,      :  Docket No. 17-CR-49
                               :
               Plaintiff,      :  Covington, Kentucky
                               :  Thursday, February 15, 2018
       versus                  :  10:00 a.m.
                               :
MARIE ANTOINETTE CASTELLI,     :
                               :
               Defendant.      :

                            - - -

                   TRANSCRIPT OF SENTENCING
                   BEFORE DAVID L. BUNNING
               UNITED STATES DISTRICT COURT JUDGE

                            - - -

APPEARANCES:

For the United States:      ROBERT K. McBRIDE, ESQ.
                            JASON DENNEY, ESQ.
                            U.S. Attorney's Office
                            207 Grandview Drive
                            Suite 400
                            Ft. Mitchell, KY 41017-2762


For the Defendant:          JAMES M. WEST, ESQ.
                            The Law Office of James M. West
                            2045 Dixie Highway
                            Suite 201
                            Ft. Mitchell, KY 41011


Court Reporter:             JOAN LAMPKE AVERDICK, RDR, CRR
                            Official Court Reporter
                            35 W. Fifth Street
                            Covington, KY 41011



     Proceedings recorded by mechanical stenography,
transcribed via computer-aided transcription.
```

1        (Proceedings commenced at 10:00 a.m.)

2              THE COURT:  All right.  Good morning, everyone.
3   Madam Clerk, if you would call the first matter on the docket
4   this morning.

5              DEPUTY CLERK:  Covington criminal 17-49, United
6   States versus Marie Antoinette Castelli.

7              THE COURT:  All right.  Start with entries of
8   appearance, please.

9              MR. McBRIDE:  Good morning, Your Honor.  Bob McBride
10  on behalf of the United States.  With me is Mr. Denney.

11             THE COURT:  An old friend of the Court.  Are you back
12  here just for this one case?

13             MR. DENNEY:  I am, Judge.

14             THE COURT:  Welcome.

15             MR. DENNEY:  Thank you.  Good to see you.

16             MR. McBRIDE:  And then the case agent, Special Agent
17  Kris Holden.

18             MR. WEST:  Good morning, Your Honor.  Jim West on
19  behalf of Marie Castelli, who's seated to my left.

20             THE COURT:  Ms. Castelli, the gentleman in the middle
21  used to be a prosecutor in this court.  I think he's been in
22  DC for a while.  So just FYI.  You're probably wondering who
23  was that person Judge was talking to.

24          Okay.  We have the matter set for final sentencing.  And
25  as you know, back in the fall when I accepted her (c)(1)(C)

1  plea agreement, there was an agreed-to sentence that the Court
2  has adopted. Since then, the probation officer has prepared
3  her presentence report and an addendum and a supplemental
4  addendum.
5  There are two objections -- there's a set of objections.
6  The first objection was in an e-mail from Mr. West dated
7  January 19th, and then the second one was an e-mail, I think
8  from two days ago, regarding some activity over at the jail.
9  Before I get to those, I just want to confirm,
10 Ms. Castelli, have you been provided a copy of the presentence
11 report by your lawyer?
12         THE DEFENDANT: Yes, sir.
13         THE COURT: Okay. Have you had a chance to review it
14 with him?
15         THE DEFENDANT: Yes, I have.
16         THE COURT: Okay. Now, he did submit objections on
17 your behalf. The first one -- and I think even in your
18 sentencing memorandum, Mr. West, you acknowledge that this
19 increase in the base offense level that is recommended in
20 paragraphs 18 to 24 has no impact on the adjusted offense
21 level, given the higher offense level under a different
22 section.
23         MR. WEST: That is correct.
24         THE COURT: Okay. Do you agree with that?
25         MR. McBRIDE: We do, Your Honor.

1 THE COURT: Okay. Because the contested matter will
2 not affect sentencing in this binding plea agreement case
3 pursuant to Rule 11(c)(1)(C), the Court does not need to
4 formally make a ruling on that objection. I don't think it's
5 necessary. The rule allows me, in circumstances where I've
6 accepted a binding plea agreement, not to make a ruling, and
7 I'm intentionally choosing not to because it's not going to
8 impact the sentence.
9 Now, the other specific corrections, or objections, that
10 you have requested in that same e-mail to certain paragraphs
11 in the PSR, again, none of which impact or affect the
12 sentence, Mr. West, are you satisfied with the addendum
13 prepared, that that addresses your concerns? In fact, it's
14 been incorporated by way of your e-mail.
15 MR. WEST: Absolutely, Your Honor. Thank you.
16 THE COURT: All right. Now, the second addendum,
17 I've spoken briefly with the probation officer this morning.
18 I've reviewed your objection. I'm going to sustain it. I'm
19 going to strike it. It's just something that doesn't need to
20 be part of the PSR. In fact, given the defendant's
21 well-documented mental health issues which were discussed by
22 Dr. Connor, discussed by the BOP evaluator, very detailed in
23 the presentence report as well, I think that's probably part
24 of why it's important to get her to a facility other than a
25 local facility as promptly as possible.

1          And some of the comments, even if some of them are
2     attributed to other cellmates, I think that's part and parcel
3     to her mental health issues.  So I just don't think that that
4     type of thing needs to be attached, especially something that
5     reads like a DEA-6 or FBI-302 or something.
6               MR. WEST:  Thank you, Your Honor.
7               THE COURT:  All right.
8          Do you object to that?  You can object, but I'm going to
9     overrule it.
10              MR. McBRIDE:  Judge, our position is it shouldn't be
11    amended, but we're not objecting to your ruling.
12              THE COURT:  All right.  Very well.  I just think it's
13    important to get the defendant sentenced and the help she
14    certainly needs from a mental health perspective.
15         Okay.  Let me now turn to -- so Michelle, whatever was
16    attached in the second addendum, before it's actually
17    transmitted to the PSR, you can just take that out.
18              THE PROBATION OFFICER:  Yes.
19              THE COURT:  Okay.
20         Mr. McBride, as far as the charge itself, the two
21    charges, offenses of conviction, are there any victim
22    statements?  I didn't receive anything from any of the service
23    members, anything like that.
24              MR. McBRIDE:  No, Your Honor.  We did our due
25    diligence with victim notification.  We received nothing.

1    Candidly, these individuals have been victims of similar
2    things before, and some of the original threats have been
3    floating around the Internet for some time.  So they provided
4    no input for the Court to consider.
5              THE COURT:  Okay.  Thank you.
6         All right.  Well, I do have the defendant's sentencing
7    memorandum which was filed of record.  I also received a
8    letter from her daughter and a friend of yours from
9    New Jersey, both of which I reviewed.  They both discuss your
10   impulsive behavior, this bipolar diagnosis, which are
11   certainly -- I think your daughter mentioned the fact that
12   your mom passed and that probably was a contributing factor in
13   some decisions you made.
14        So those are the only two letters I've received.  Are you
15   aware of any others I'm supposed to have received?
16             MR. WEST:  No, Your Honor.  Those are the two
17   letters.
18             THE COURT:  Did you receive them?  I think at least
19   one of them was filed.
20             MR. McBRIDE:  I did receive them, as well as
21   Mr. West's sentencing memorandum.
22             THE COURT:  Okay.  Very well.
23        If you'd like to be heard, you certainly have a right to
24   address the Court.  This is a binding plea agreement, so it's
25   my intention to follow the recommendation in the plea

1    agreement pursuant to the discussion we had last fall.
2             MR. WEST:  Yes, Your Honor.  I completely agree.  We
3    would request the Court follow that binding plea agreement.
4    We outlined the reasons why that binding plea agreement is a
5    fair agreement to both sides, and we'd ask the Court to follow
6    it.
7             THE COURT:  Okay.  Do you have a request for a
8    designation?  I don't know if you want to be designated
9    somewhere closer to New Jersey or not.  You certainly need to
10   go to a medical center, in my view.
11            THE DEFENDANT:  That's fine.
12            MR. WEST:  The Federal Medical Center in Lexington,
13   Kentucky would be the request of the defendant.
14            THE COURT:  Okay.  I can make that, and I'll put that
15   in the judgment.  I would ask Jared if we can get her
16   designated.  I'm sure Probation will do whatever they can to
17   expedite that.
18            MR. McBRIDE:  Judge, and the government would support
19   that recommendation.
20            THE COURT:  Okay.
21       Ma'am, you have a right to address the Court if you wish.
22   You can say nothing if you'd like.
23            THE DEFENDANT:  I really would like to say something.
24            THE COURT:  All right.  If you would please stand
25   while you're addressing the Court.

1    THE DEFENDANT:  One of the things I would like you to
2    understand, clarify, I think the PSR, the one item, I think it
3    was 7, 8 and 11, the whole thing that mentions about Power
4    Stranger sites.  And it's misleading the way it's written,
5    just so you understand.  I have no objection to it if you want
6    to keep it that way, but just so you understand.
7    MR. WEST:  Okay.  Can I talk to my client for just a
8    second?
9    THE COURT:  Sure.  Sure.
10   Can you turn on the white noise for a second?
11   (The defendant and counsel conferred.)
12   THE DEFENDANT:  No, nothing, Your Honor.
13   THE COURT:  Okay.  Mr. McBride?
14   MR. McBRIDE:  No, Your Honor, we have nothing.  Thank
15   you.
16   THE COURT:  Well, I may have mentioned this when I
17   accepted the plea here.  I don't have an independent
18   recollection of it specifically.  It is the unusual case to
19   have a binding plea agreement.  In fact, there are some
20   judges -- I don't think we have any now.  All the judges in
21   the Court have now accepted at least one binding plea
22   agreement.  But they are things that are unique.  They
23   certainly are appropriate in given circumstances.
24   Sometimes they are used to recognize unique individuals,
25   unique charges, unique explanations, situations where

1  individuals are suffering from certain mental health concerns,
2  which I think is part and parcel to what we have here.
3      The facts of the case are well documented in the PSR, the
4  interstate communication of these two threats, putting them on
5  Facebook.  This is certainly a serious situation.  That's why
6  the guidelines are so high.
7      Now, just because the guidelines are high doesn't mean
8  what amounts to seven and a half years and nine months is not
9  an appropriate sentence given the unique circumstances here.
10     You're 57 years old.  You certainly have a
11 well-documented history of mental illness.  We have
12 Dr. Connor's report, which was filed under seal, Dr. Correa's
13 report also filed under seal, a detailed account of your
14 mental health problems, including mood disorders, PTSD,
15 bipolar, schizoaffective disorder.  All of those things will
16 need to be addressed within the BOP.
17     You're a New Jersey native, have no criminal history.
18 You're divorced, have two adult daughters.
19     This, of course, is a serious offense.  I think the
20 offense clearly warrants the 90-month sentence.  It's
21 reasonable under the unique circumstances of this case.
22     Fortunately, nothing occurred -- and we see, as I turned
23 on the television this morning, the power of the Internet, the
24 power of social media.  The first thing that people look at
25 when we have shootings like the school shooting that occurred

1   in Parkland, Florida is a review of the individual's social
2   media accounts reveals blah, blah, blah.  And all it takes is
3   one individual who is not completely of sound mind to look at
4   something and say, That sounds like a real good idea.  I've
5   always kind of wanted to be in court.  I'll mow down some
6   people.  It's part of our society, unfortunately.
7        Now, the discussion we can have outside the courtroom
8   would be a lively one.  I'm certainly not going to be
9   responsible for any of those things.  The shooting is an
10  observation of the power of the Internet.  The power of the
11  Internet is strong.  I think all of us long for the days of
12  landline phones and typewriters.  Our lives would be a lot
13  easier.  Investigations would be more complicated.  They
14  probably would take longer.  Be that as it may, in this case,
15  a 90-month sentence is certainly appropriate.
16       So it will be the judgment of the Court that the
17  defendant, Marie Antoinette Castelli, is hereby committed to
18  the custody of the Bureau of Prisons to be imprisoned for a
19  term of 90 months on Counts 1 and 2, concurrently with each
20  other, for a total of 90 months.
21       I will make a couple of recommendations to the Bureau of
22  Prisons.  Actually, three.
23       First, that she participate in a job skills and
24  vocational training program.  She certainly has a
25  well-documented history of working at AT&T so she's not afraid

1  of working, and that certainly would be a helpful
2  recommendation.
3      Second and perhaps most importantly, that she participate
4  in a mental health program within the Bureau of Prisons.
5      And lastly, I'll recommend that the defendant be
6  incarcerated at the Federal Medical Center in Lexington,
7  Kentucky. And the reports of Drs. Correa and Connor certainly
8  bear out why that recommendation should be followed.
9      Upon release from imprisonment, you'll be placed on
10 supervised release for a term of three years on each of Counts
11 1 and 2 concurrently with each other for a total term of three
12 years.
13     Within 72 hours of release from the custody of the Bureau
14 of Prisons, you must report in person to the Probation Office
15 in the district to which you are released.
16     While on supervised release, you must not commit another
17 federal, state, or local crime, must comply with the mandatory
18 and standard conditions set forth in the judgment and
19 commitment order that have been adopted by this Court, and
20 must comply with the following additional conditions:
21     First, you must not possess a firearm, destructive
22 device, ammunition, or dangerous weapon.
23     Second, you must refrain from any unlawful use of a
24 controlled substance.
25     You must submit to one drug test within 15 days of

1   release from imprisonment and at least two periodic drug tests
2   thereafter.
3       Additionally, you must comply with the following special
4   conditions that have been adopted by the Court:
5       You must provide Probation with access to any requested
6   financial information.
7       You must attend and successfully complete any mental
8   health diagnostic evaluations and treatment or counseling
9   programs as directed by Probation.  You must pay for the cost
10  of the treatment services to the extent you are deemed able by
11  Probation.
12      Based upon the serious nature of the offense and the
13  facts and circumstances of the case, the Court is going to
14  impose a number of additional conditions.
15      You must submit your person, property, house, residence,
16  vehicle, papers, and computers as defined in 18 U.S. Code
17  Section 1030(e)(1), but including other devices excluded from
18  this definition, other electronic communications and storage
19  devices or media, or your office, to a search conducted by a
20  U.S. probation officer.  Failure to submit to such a search
21  will be grounds for revocation.  You must warn any other
22  occupants that your premises will be subject to search
23  pursuant to this search condition.
24      You must also not possess or use a computer or any other
25  device with access to any online computer service at any

Case: 2:17-cr-00049-DLB-MAS   Doc #: 29   Filed: 05/28/19   Page: 13 of 15 - Page ID#: 156

13

1    location, including any place of employment, without the prior
2    approval, written approval, of Probation.  This would include
3    any ISP, bulletin board system, or other public or private
4    network or e-mail systems.  And you must consent to
5    U.S. Probation conducting an unannounced examination of your
6    computer system and internal and external storage devices,
7    which may include retrieval and copying of all memory of
8    hardware and software and/or removal of such systems for the
9    purpose of conducting a thorough inspection.
10        You must consent to having installed on your computer any
11   hardware or software to monitor your computer use or prevent
12   access to particular material.  And you must consent to
13   periodic inspection of any such installed hardware or software
14   to ensure that it is functioning properly.
15        You must provide Probation with accurate information
16   about your entire computer system, including any hardware and
17   software and internal and external storage devices, all
18   passwords used by you.  You must abide by the rules of the
19   computer restriction and monitoring program adopted by
20   Probation.
21        You must provide Probation with access to any requested
22   financial information.  This specific condition for financial
23   disclosure is recommended as a means to allow Probation to
24   monitor purchases of electronic and/or peripheral devices, as
25   well as any Internet server either subscribed to or accessed

1       by you.

2              You must not have any social media account and must

3       provide U.S. Probation with access to any and all e-mail

4       accounts.

5              You must not possess, view, access, or otherwise use

6       material that reflects extremist or terroristic views or

7       deemed to be inappropriate by Probation.

8              You must not have any contact, directly or indirectly,

9       with Victims 1, 2, or 3, or any of their families.

10             Based upon your current financial situation, the Court is

11      going to waive a fine.  However, I must order that you pay to

12      the United States a special assessment of $100 per count, for

13      a total of $200, which shall be due immediately.

14             So that will be the judgment of the Court.  Does either

15      side have any legal objection to the sentence just pronounced

16      that was not previously raised?

17                  MR. McBRIDE:  We have no objection, Your Honor.

18                  MR. WEST:  No, Your Honor.

19           I would like to make sure that she gets credit for the

20      time that she's been in federal custody since September 8th of

21      2016.

22                  THE COURT:  We will make that part of the

23      recommendation.  Of course, the Bureau of Prisons does that.

24      We'll put those specific dates.  The first date mentioned in

25      the release status, September 8th, 2016, to present, we'll

15

1    recommend that she receive credit for that.
2             MR. WEST:  Thank you, Your Honor.
3             THE COURT:  Thank you.
4        What says the United States regarding a count in Criminal
5    16-33?
6             MR. McBRIDE:  We move to dismiss, Your Honor.
7             THE COURT:  That motion is granted.  That indictment
8    is dismissed.
9        Okay.  Mr. West, thank you for your service in this
10   matter.  The last of the interim vouchers in the old case is
11   in the pipeline.  This 17-49 was judicially appointed.  You
12   can submit a separate one.
13            MR. WEST:  Thank you, Your Honor.
14            THE COURT:  Anything else we need to take up?
15            MR. McBRIDE:  Not from the United States, Your Honor.
16            THE COURT:  Mr. West?
17            MR. WEST:  Nothing further, Your Honor.
18            THE COURT:  Very well.  Defendant will be remanded to
19   the custody of the marshal.  We'll be in recess until 10:30.
20        (Proceedings concluded at 10:23 a.m.)
                                         -  -  -
21
                       C E R T I F I C A T E
22
             I, JOAN LAMPKE AVERDICK, RDR, CRR, certify that
23   the foregoing is a correct transcript from the record of
     proceedings in the above-entitled case.
24
     _\s\ Joan Lampke Averdick____       __May 28, 2019___
25   JOAN LAMPKE AVERDICK, RDR, CRR      Date of Certification
     Official Court Reporter